JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant, Arto Green, brings this appeal challenging his convictions for felonious assault and domestic violence. After a thorough review of the record and for the reasons set forth below, we affirm.
 {¶ 2} On October 4, 2006, the Cuyahoga County Grand Jury returned an indictment against appellant charging two counts of felonious assault and one count of domestic violence, all with firearm specifications. Prior to trial, appellant waived his right to a jury trial. On August 6, 2007, a bench trial commenced, wherein the court found appellant guilty of Count 1 (felonious assault) and Count 3 (domestic violence) and not guilty of Count 2 and all firearm specifications. The court proceeded directly to sentencing. Appellant was sentenced to three years on Count 1 and six months on Count 3.
 {¶ 3} This appeal stems from an incident that occurred on August 21, 2006. The state presented two witnesses at trial, the victim and the police officer who responded to the 911 call.
 {¶ 4} The victim, Kylia Greene, testified to the following. She and appellant had been girlfriend and boyfriend for many years and had two children together. Appellant spent almost every night at her home, although they did not live together. On the night of August 21, 2006, she and Clarence Horn, a man she was then romantically involved with, were at the Northcoast Grill ("the bar"), located at East 49th Street and St. Clair Avenue in Cleveland, Ohio. She noticed appellant in the *Page 4 
bar. He walked towards her and asked her, "Are you f[***]ing him?" Appellant then immediately punched her in the right eye, cutting her eye. Horn and appellant proceeded to get in a fight until the bar security separated them. She went into the bathroom to clean up the cut on her face.
 {¶ 5} The victim further testified that most of the patrons, including Horn and appellant, left the bar after the fight, but she was afraid to leave for fear of appellant. However, she and another friend named Keanee were escorted to the parking lot by two unidentified male patrons of the bar. Once outside the bar, she noticed appellant running towards her, pointing a black nine-millimeter semiautomatic gun at her. She recognized the kind of gun because she had seen appellant with similar guns on prior occasions. The two men escorting her ran when they saw appellant with the gun. Appellant stood in front of her, cussing and ranting. He swung at her, although she closed her eyes and tried to block her face. Appellant hit her in the right eye with some part of the gun, but she could not identify which part. She fell to the ground, and an unidentified person led her back to the bar to clean up. An ambulance took her to MetroHealth Medical Center for treatment, which included two or three stitches to the skin around her eye and a prescription for pain medication.
 {¶ 6} Officer John Spahia testified to the following. He questioned the victim while she was inside the EMS vehicle. She was crying hysterically and kept repeating, "He was going to kill me." He learned that appellant was the person who *Page 5 
had struck the victim in the face. He did not question other witnesses because no one else was there after the bar had closed.
 {¶ 7} At the close of the state's case, appellant moved for a Crim.R. 29 acquittal, which the court denied.
 {¶ 8} The defense produced one witness, Lakeisha James, appellant's niece, who testified to the following. She spoke with the victim about the August incident when the two women saw each other at the bar in October 2006. She did not notice that the victim's eye was scarred or scratched at that time. She and the victim had a telephone conversation in April 2007 in which the victim indicated that the fight was between Horn and appellant. Ms. James further testified that appellant was "jumped" by the victim and Horn at the bar. She testified that she was not at the bar on the night the incident occurred, and she did not witness the altercation.
 {¶ 9} After the defense rested, appellant renewed his Crim.R. 29 motion, which the court denied. The court found appellant guilty of felonious assault, in violation of R.C. 2903.11(A)(1), and domestic violence, in violation of R.C. 2919.25, and it sentenced him to a total of three years in prison.
 Review and Analysis {¶ 10} Appellant timely filed his notice of appeal and cites two assignments of error for review.
 Insufficient Evidence *Page 6 {¶ 11} "I. The trial court erred in failing to grant appellant's motion for judgment of acquittal on the charges of felonious assault as set forth in Count One of the indictment."
 {¶ 12} Appellant argues that the state failed to produce sufficient evidence on all elements of felonious assault. He specifically argues that there was no evidence that he caused the victim serious physical harm, as defined in R.C. 2901.01(A)(5). We do not agree.
 {¶ 13} Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486,124 N.E.2d 148. A conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982),457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652, citing Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 14} Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and sufficiency of the evidence. State v. Nicely (1988), 39 Ohio St.3d 147,529 N.E.2d 1236. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine.State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. On review, the appellate court must determine, after viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could have found the essential *Page 7 
elements of the crime proven beyond a reasonable doubt. State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492; Jackson, supra.
 {¶ 15} R.C. 2903.11 states in relevant part: "(A) No person shall knowingly *** (1) Cause serious physical harm to another or to another's unborn; ***."
 {¶ 16} R.C. 2901.01(A)(5) defines "serious physical harm" as "any of the following: *** (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity; (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement; (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 17} The evidence at trial was sufficient to support a finding of guilt on the felonious assault charge. Appellant punched the victim in the face while they were in the bar. Outside the bar, appellant ran at the victim, brandishing a foreign object, [1] which he used to "pistol-whip" her, according to MetroHealth medical records. (Joint Ex. 1.) The record further indicates that the victim presented at the emergency room with right facial pain, a black eye, a swollen face, and a laceration over her eye that required local anesthesia and stitches; she was also prescribed pain medication. (Joint Ex. 1.) *Page 8 
 {¶ 18} The victim testified that she suffered from significant bruising and swelling around her eye, that she wore a patch over her eye for over a week after the incident, and that she presently has a scar over her right eye that requires makeup to conceal. Officer Spahia testified that when he interviewed the victim, he saw that "a lot of blood was coming from her head where she had been struck. Her shirt was covered with blood. *** She just had a big cut on her head."
 {¶ 19} The testimony of the victim and Officer Spahia, along with the victim's medical records from MetroHealth, provide sufficient evidence to sustain a conviction of felonious assault. The court did not err in denying appellant's Crim.R. 29 motion. Appellant's first assignment of error is overruled.
 Manifest Weight {¶ 20} "II. The trial court's verdict of guilty as to felonious assault and domestic violence were against the manifest weight of the evidence."
 {¶ 21} Appellant argues that the court erred by convicting him of felonious assault and domestic violence because the findings of guilt were against the manifest weight of the evidence. We do not agree.
 {¶ 22} Upon application of the standards enunciated in Tibbs, supra, the court in State v. Martin (1983), 20 Ohio App.3d 172,175,485 N.E.2d 717, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated: *Page 9 
 {¶ 23} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 24} In determining whether a judgment of conviction is against the manifest weight of the evidence, this court in State v. Wilson (June 9, 1994), Cuyahoga App. Nos. 64442 and 64443, adopted the guidelines set forth in State v. Mattison (1985), 23 Ohio App.3d 10, 490 N.E.2d 926, syllabus. These factors, which this court noted are in no way exhaustive, include: "1) Knowledge that even a reviewing court is not required to accept the incredible as true; 2) Whether evidence is uncontradicted; 3) Whether a witness was impeached; 4) Attention to what was not proved; 5) The certainty of the evidence; 6) The reliability of the evidence; 7) The extent to which a witness may have a personal interest to advance or defend their testimony; and 8) The extent to which the evidence is vague, uncertain, conflicting or fragmentary." Id.; see State v. Moore, Cuyahoga App. No. 81876, 2003-Ohio-3526.
 {¶ 25} We do not find that the trial court lost its way in finding appellant guilty of felonious assault. The victim has a permanent facial scar; she needed to wear a patch to cover her bruises and swelling for over a week after appellant hit her twice-once with his hand and once with a foreign object; and she testified to experiencing *Page 10 
pain requiring her to take prescription pain medication. We believe this constitutes permanent disfigurement as well as prolonged pain.
 {¶ 26} Further, we hold that the trial court did not err in finding appellant guilty of domestic violence. R.C. 2919.25 states in relevant part, "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member; (B) No person shall recklessly cause serious physical harm to a family or household member; (C) No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member."
 {¶ 27} Appellant argues under this assignment of error that the evidence did not support a finding of serious physical harm; however, we hold that the trial court's guilty verdict on the felonious assault charge satisfies that element. Therefore, we address whether the victim's relationship with appellant satisfies that of a family or household member.
 {¶ 28} R.C. 2919.25(F)(1)(a)(1) defines family or household member as "a spouse, a person living as a spouse or a former spouse of the offender." "A person living as a spouse" is defined as a person who is cohabitating, or who has cohabitated with the offender within five years preceding the offense. R.C. 2919.25(F)(2).
 {¶ 29} The victim falls within the definition of a family or household member of appellant. The evidence at trial from both the victim and appellant's niece, Ms. *Page 11 
James, shows that appellant and the victim had two children together. The victim testified that appellant spent almost every night in her home, up to the time of the incident. Although there is no evidence that they were married, the victim's testimony was she and appellant did cohabitate for over five years preceding this incident.
 {¶ 30} We find that the conviction for domestic violence was not against the manifest weight of the evidence and that the trial court did not err; therefore, we overrule appellant's second assignment of error.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, P.J., and MARY EILEEN KILBANE, J., CONCUR
[1] Although the victim testified that she saw appellant with a gun, the trial court found him not guilty on all firearm specifications. *Page 1